### MILES THOMPSON *v.* THE STATE.

1. RAPE — EVIDENCE.— In a trial for rape the injured female was allowed, over objection by the defense, to narrate the circumstances of an assault made by the accused upon her father-in-law, when the latter came to her rescue during her struggle with the accused. *Held,* that the evidence was *res gestæ* and germane to the accusation for which the accused was on trial.

2. SAME.— The same witness was further allowed, over objection, to state the fact that her father-in-law was dead at the time of the trial. *Held,* that this fact was admissible to account for the non-production of an important witness by the prosecution.

3. CROSS-EXAMINATION.— The extent of a cross-examination is a matter which must in practice be largely left to the discretion of the trial judge. The cross-examiner cannot, as a matter of legal right, require that the witness shall restate his testimony in chief.

APPEAL from the District Court of Austin. Tried below before the Hon. L. W. MOORE.

The indictment charged the appellant with committing a rape upon Eliza Janssen, in Austin county, on July 15, 1880. The jury found him guilty, and assessed his punishment at death.

The evidence in the case was unusually concise and conclusive. S. R. Blake, a justice of the peace, was introduced by the State, and identified a document as a statement made by the defendant before the witness in his official capacity. The statement was voluntarily made by the defendant after he had been fully warned as the statute directs. On this predicate the prosecution introduced the statement itself, as follows:

" Last Thursday night I left the house of Mr. H. Lewis

in the Brazos bottom, to go to my brother-in-law's on Mrs. Freder's place. When I passed Mrs. Janssen's place I hallooed, and Mrs. Janssen came out, and I asked her if she wanted anybody to pull fodder. She said no. I then asked her if she had anything to eat. She said no. She stood there a while and then started into the house, and before she got in I caught her and threw her down, and the old man came out with an ax. I turned the woman loose, and when I was getting up he struck me in the head with the ax. I then knocked him down with my fist. I turned round to the woman, and she jumped in the house and told me to leave, and I went off.

(Signed)                    " MILES x THOMPSON."
                                    his
                                    mark.

The State proved that the day referred to in the above statement was the date of the offense as charged in the indictment, to wit, July 15, 1880.

Mrs. Janssen, testifying for the State, said she was a widow with six children. Between ten and eleven o'clock in the night of Thursday, July 15, 1880, the defendant came to witness's place in Austin county. Witness was in bed, but, hearing her dogs barking, she dressed and went out to the gate, thinking her brother had come for her on account of his sick family. She found, however, that it was not her brother but the defendant. He asked for something to eat, and inquired if witness wanted any one to pull fodder. Being scared and anxious to get back into the house, witness promised to get him something to eat, and started into the house. Just before reaching the house she felt a pressure on her shoulder, and at first thought it was a large dog of hers; but it was the defendant. He caught her by the throat and threw her down. She managed to get his hands from her throat long enough to enable her to scream twice. Her father-in-law, who was seventy-four years old, but strong considering his age, came out of the house and saw the defendant on top of the witness. The defendant raised up and struck

the old man, who thereupon went away and soon returned with an ax, and struck defendant on the head a blow with the edge and another with the back of the ax.    Defendant took the ax from the old man and knocked him down, and then came back to witness, with a knife in his hand, and told her to hush up or he would kill her.    She had resolved to die rather than submit to the defendant's embraces, but her strength was about exhausted, and she thought of her helpless children, and on their account thought it best, to submit without further struggle.    She did not have strength to resist the defendant, but at no time consented to his having intercourse with her.    After he came with the knife he succeeded in effecting penetration of her person, and accomplished his purpose.    In her scuffle with him he made several scratches and bruises on her neck and face, and also a cut on her knee and a bruise on her hip.    Witness's father-in-law had since died.    After he was knocked down by the defendant he lay on the ground, bleeding and un-, conscious, until after the defendant had accomplished his purpose and gone away; and then he called to witness for assistance, and she got him into the house.

A brother of Mrs. Janssen testified that he lived about half a mile from her, and that, about eleven o'clock in the night of July 15, 1880, she came to his house in an excited and distressed condition.    She told the witness that she had been ravished, and her face and neck were scratched and bruised.

J. Graff, for the State, testified that he was one of the party who arrested the defendant, and that when they brought the defendant near Mrs. Janssen's she exclaimed " That is the man."

C. L. Langhammer, for the State, testified that he as-. sisted in arresting the defendant, and on the defendant's head he found a wound made by some edged instrument. In defendant's hat there was a cut which had been sewed

up, and which precisely corresponded with the cut on his head. The hat worn by defendant when arrested was produced and identified.

This concluded the evidence for the prosecution. None was offered by the defense.

No brief for the appellant.

*H. Chilton*, Assistant Attorney General, for the State.

WHITE, P. J. Having been convicted of rape upon one Eliza Janssen, alleged to have been committed on the night of the 15th of July, 1880, in Austin county, appellant has appealed to this court from the judgment, which affixed his punishment at death.

Two bills of exception, reserved on the trial by the defendant to rulings of the court, appear in the record. The first is as follows, viz.: "The injured party, Mrs. Janssen, was allowed, over objection of defendant, to tell the jury that the old man, her father-in-law, was knocked down by defendant,—remained on the ground bleeding and helpless,—and that after the rape had been committed called to her for assistance, and that she got him into the house,—that he is now dead. Defendant, by counsel appointed by the court, objected to this for the reason that the prisoner was on trial for the rape of Mrs. Janssen, and not for the murder or assault of the old man, her said father-in-law, and that the statement was irrelevant and improper, and calculated to greatly influence the minds of the jury against defendant to his great injury," etc.

Defendant certainly has no good ground to complain of the admission of that portion of the testimony relating to his knocking the old man down, even if it had been inadmissible, because he states the fact himself in his voluntary statement given by him at his examining trial under the formalities of the law, and which statement

had been previously read in evidence in this trial by the prosecution. But, over and above this, the evidence as to the assault upon the old man was *res gestæ*, was part of the transaction, and as such was legitimate evidence. So far as the additional statement by the witness of the fact that her father-in-law was dead is concerned, it was admissible as it fully accounted for the non-production of this old man, who, from the other evidence adduced, would have been beyond doubt a most important witness to corroborate in a great measure the evidence of the prosecutrix. We see no error in the admission of this testimony.

With regard to the second bill of exception, the explanation of his Honor in approving the bill is entirely satisfactory and fully meets the objection urged. He says, "the witness had testified fully and in detail, over and over again, as to penetration; she complained of further examination as indelicate to her; the court then interfered and an interpreter, by request of witness, was then sworn to interpret for her, and through this interpreter testified fully again, without any limitation being imposed, as to penetration."

On cross-examination, the extent to which the witness may be interrogated must necessarily be and is in a great measure confided to the discretion of the trial judge. *Stevens* v. *State*, 7 Texas Ct. App. 39; *Arnold* v. *Nye*, 23 Mich. 287; *Wallace* v. *Taunton Street Railway*, 119 Mass. 91; *Comm.* v. *Lyden*, 113 Mass. 452; *Comm.* v. *Shaw*, 4 Cush. 593.

"Besides, although it may be important sometimes to ask a witness to repeat a former part of his testimony, there is no legal right to insist upon this. If there were, it would be without limit. It is evidently a matter entirely within the sound discretion of the court below, whose duty it is to take care that the public time is not needlessly consumed in mere repetitions; and the trial

judges have an undoubted right to interpose in such matter though no objection be raised by the opposite party." *Aiken* v. *Stewart*, 63 Pa. St. 30. And, as seen above, there is less reason for any exception in this instance, as the learned judge allowed the witness subsequently to be examined again, without limit, through an interpreter, upon the very matters complained of. It is not easy to see what injury was done the defendant in this.

Having discussed the only questions raised in the record, it only remains for us to say that the trial, which resulted in the declaration that defendant's life should pay the forfeit for his crime, appears to have been eminently fair and impartial. That he is guilty of the heinous offense with which he was charged cannot be doubted if the evidence be believed. And the fiendish atrocity attending its perpetration may well justify the jury in imposing the highest penalty known to the law.

The judgment is in all things affirmed.

*Affirmed.*